[Civ. No. 67596. Second Dist., Div. Six. Jan. 3, 1986.]

ROBERT A. BAKER, Plaintiff and Appellant, v.
CHARLES A. PRATT, Defendant and Appellant.

374

COUNSEL

Gregory D. Abel, Robert D. Wendt, Wendt, Ronca & Woolpert, J. J. Nagel and Nagel, Nagel & Harris for Plaintiff and Appellant.

Carl E. Hayes and Burke, Smith, Helenius & Hayes for Defendant and Appellant.

OPINION

**OCHOA, J.**\*—This is an appeal of a judgment stemming from six consolidated lawsuits involving Robert A. Baker (respondent or cross-appellant

*Assigned by the Chairperson of the Judicial Council.

herein), Charles A. Pratt (appellant herein), and several corporate entities with which they were involved. From 1963 to 1972, respondent and appellant operated a pipeline construction business, West Coast Construction Co., Inc. They were employed full-time by the company and were the sole shareholders with appellant owning approximately 51 percent of the stock and respondent the remaining 49 percent. Respondent and appellant also each owned 50 percent of the shares of a Nevada corporation, West Coast, Inc. In addition, the parties jointly owned an apartment building, various parcels of real property and conducted other joint business ventures.

In late 1971, the parties had a falling out and agreed to sever their various business relationships entirely. They engaged an accountant and an attorney to prepare a plan for distribution of their assets so as to minimize tax consequences. The plan resulted in an agreement wherein respondent would receive his portion of the corporate assets of West Coast Construction Co., Inc., over a period of time as an employee of that corporation. The parties would then form separate construction companies and go their separate ways.

The agreement (which was later determined to be legally improper) broke down, and respondent was thereafter effectively shut out of the corporate enterprises. This further conflict resulted in six separate lawsuits being filed. In case one, respondent sued appellant for breach of the employment agreement they had worked out for distribution of corporate assets. In case two, respondent sued appellant alleging that appellant had assumed sole possession and control of the business and assets of an oral partnership agreement relating to properties and apartments, had failed to make accountings, and had misappropriated funds. In case three, the construction corporation owned by respondent, R. Baker Construction Co., sued West Coast, Inc., for rents relating to the use of respondent's equipment on a construction project. In case four, R. Baker Construction Co., Inc., sued appellant alleging a default on a promissory note. In case five, respondent sued West Coast, Inc., for involuntary dissolution of the corporation and requested a receiver be appointed for the corporation. In case six, respondent sued West Coast Construction Co., Inc., for involuntary dissolution of the corporation and requested that a receiver be appointed. Various cross-complaints were filed in response to several of these actions.

On October 15, 1973, the trial court ordered the matters consolidated upon appellant's motion under the initial case name and number. The court appointed a referee to hold hearings and prepare findings and recommendations in regard to the various issues presented in the consolidated actions. Between 1975 and 1980 a number of hearings were conducted which resulted in findings and recommendations from the referee. The trial court filed its intended decision on October 23, 1981, and entered judgment in

the matter on February 15, 1982, wherein respondent was the prevailing party.

According to the terms of the judgment, appellant owed West Coast Construction Co., Inc., the sum of $399,659.56; he owed West Coast, Inc., $11,135; and he owed respondent $53,500. All of these awards carried interest at 7 percent per annum from November 30, 1972, according to the terms of the judgment. The judgment further specified certain sums with interest due to the parties from the corporate entities and each other. A motion for new trial was made and conditionally granted, subject to respondent's acceptance of a modified judgment striking prejudgment interest. Respondent accepted the modified judgment, and appellant thereafter noticed his appeal claiming error in regard to several aspects of the judgment entered. Respondent noticed a cross-appeal in regard to the trial court's conditional grant of the motion for new trial.

ISSUES

1. Was the trial court empowered to award attorneys fees to respondent under either the "common fund" or "substantial benefit" theory?

2. Was it error for the trial court to include monetary compensation for "goodwill" of the corporation in this action?

3. Was it proper for the court to have ordered appellant to pay certain sums to the corporation and other sums to respondent?

4. Did the trial court use an acceptable method for calculating damages in this action?

5. Was it error for the trial court to conditionally grant appellant's motion for new trial, subject to respondent's acceptance of a modified judgment?

1. *Attorneys Fees*

The trial court awarded respondent $120,000 for attorneys fees to be paid by West Coast Construction Co., Inc. The award was premised upon the court's power to award attorneys fees under the "common fund" and "substantial benefit" doctrines. Appellant asserts that these doctrines are inapplicable to the instant case and that the court was without authority to make the award.

The court found that this litigation was, in essence, a shareholder's derivative action brought on behalf of the corporation for the benefit of all the

shareholders, that a common fund had been created as a result of the action, and by inference, that the litigation had resulted in "substantial benefit" to the corporation in that it had corrected or prevented ". . . an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interests." (Citing *Bosch* v. *Meeker Cooperative Light and Power Ass'n.* (1960) 275 Minn. 362 [101 N.W.2d 423, 427].)

Under the American rule, which is embodied in Code of Civil Procedure section 1021 in California, as a general proposition each party to a litigation must pay his or her own attorneys fees. There are statutory exceptions to this rule, and the courts have created several exceptions pursuant to their inherent equitable powers. Of the several court created exceptions, only the "common fund" and "substantial benefit" concepts were indicated as bases for the award of attorneys fees in this action. These theories "base recovery of attorney fees to the prevailing party on the fact that the litigation has conferred benefit on others. Thus, if the litigation has succeeded in creating or preserving a common fund for the benefit of a number of persons, the plaintiff may be awarded attorney fees out of that fund. (*Estate of Stauffer* (1939) 53 Cal.2d 124, 131-132 [346 P.2d 748].) Likewise, if a judgment confers a substantial benefit on a defendant, such as in a corporate derivative action, the defendant may be required to pay the attorney fees incurred by the plaintiff. (See e.g., *Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 323-325 [72 Cal.Rptr. 146].)" (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].)

■ Under the "common fund" principle, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 25 [112 Cal.Rptr. 786, 520 P.2d 10].) Among the bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, are: "fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; [and] correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery . . ." (*Estate of Stauffer* (1939) 53 Cal.2d 124, 132 [346 P.2d 748]; *Quinn* v. *State of California* (1975) 15 Cal.3d 162, 168 [124 Cal.Rptr. 1, 539 P.2d 761].)

■ In the instant action, respondent sued the defendant corporations in cases five and six for involuntary dissolution of the corporation. The actions

resulted in findings that appellant had misappropriated corporate funds and property, but this was to no one's detriment other than respondent's. Respondent and appellant were the only shareholders in each of the corporate entities. It is clear that respondent's "ultimate objective [was] not to secure or preserve a common fund but to establish personal adverse interests therein. In such a case fees may not be awarded." (*Gabrielson* v. *City of Long Beach* (1961) 56 Cal.2d 224, 229 [14 Cal.Rptr. 651, 363 P.2d 883]; see also *Estate of Marre* (1941) 18 Cal.2d 191, 192 [114 P.2d 591].) It cannot be claimed that there were parties other than respondent from whom fees could be sought and who were similarly situated with mutual interests in and mutual rights to proceed and recover the sums representing the fund. (*Lindsey* v. *County of Los Angeles* (1980) 109 Cal.App.3d 933, 938 [167 Cal.Rptr. 527].) There are no "passive beneficiaries" of respondent's action which he can claim should be made to bear their fair share of the litigation costs. (*Kaplan* v. *Industrial Indem. Co.* (1978) 79 Cal.App.3d 700, 705 [145 Cal.Rptr. 219].)

For similar reasons, an award of attorneys fees under the "substantial benefit" principle is improper in this case. The seminal case involving the substantial benefit rule held that "the successful plaintiff in a stockholder's derivative action may be awarded attorneys' fees against the corporation if the latter received 'substantial benefits' from the litigation, although the benefits were not 'pecuniary' and the action had not produced a fund from which they might be paid." (*Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 320 [72 Cal.Rptr. 146].) In defining what constitutes a "substantial benefit," the court held that such a benefit would be found when the "results of the action 'maintain the health of the corporation and raise the standards of "fiduciary relationships and of other economic behavior,"' or '*prevent*[s] an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.'" (*Id.,* at pp. 324-325.)

The *Fletcher* court noted that the substantial benefit rule was an extension of the common fund doctrine which is premised on a representative action being maintained for the benefit of a class of persons. (*Id.,* at pp. 321-323.) Later cases have made clear that in order to recover attorneys fees under the substantial benefit rule, the plaintiff's action must benefit an ascertainable class of representatives. (*Coalition for L.A. County Planning Etc. Interest* v. *Board of Supervisors* (1977) 76 Cal.App.3d 241, 248 [142 Cal.Rptr. 766]; *Bruno* v. *Bell* (1979) 91 Cal.App.3d 776, 783 [154 Cal.Rptr. 435]; *Jutkowitz* v. *Bourns, Inc.* (1981) 118 Cal.App.3d 102, 112-113 [173 Cal.Rptr. 248]; *Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 629 [186 Cal.Rptr. 754, 652 P.2d 985].) "The *substantial benefit* phrase would gain increased accuracy if the adjective *common* were inserted after *substantial.*"

(*County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 91 [144 Cal.Rptr. 71].)

Although the application of the substantial benefit rule is clearly not restricted to corporate derivative or class action suits (see *Coalition for L.A. County Planning Etc. Interest* v. *Board of Supervisors, supra,* 76 Cal.App.3d at p. 248), the rule can only be applied where a substantial benefit is extended to a clearly identifiable class of persons. There was no such class of clearly identifiable persons in this action, and the rule cannot therefore be applied to support an award of attorneys fees.

Both the common fund doctrine and the substantial benefit doctrine exist in equity so that the active litigator who extends a benefit to a class of passive beneficiaries is not made to bear the cost of litigation on his or her own. These actions involved the disputes of two persons in their individual capacities or of corporate entities that were owned by one or both of the parties to this action. Neither of the doctrines supports an award of attorneys fees in these disputes.

### 2. *Goodwill*

█ The trial court, in its calculations concerning division of the assets of the business interests of the parties, determined that respondent was due a credit in the sum of $50,000 for the goodwill of West Coast Construction Co., Inc. The court based its determination on a factual finding that "[w]hile the evidence supports the conclusion that both the parties establish[ed] their own new contracting entities, the fact remains that appellant did have the benefit of ongoing control and utilization of West Coast Construction Company, Inc., control over the completion of jobs in progress, and certainly was able to utilize the company for the bidding of new jobs identified with West Coast's reputation as a construction company." The court noted that goodwill is the property of the corporation alone and credited respondent with the amount previously indicated.

█ "The goodwill of a business has been said to represent the expectation of continued patronage of it by the public and constitutes a form of property that may be valued." (*Pacific Coast Medical Enterprises* v. *Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 211 [189 Cal.Rptr. 558].) A going business has a value over and above the aggregate value of the tangible property employed in it, and such goodwill is an indispensable element of the fair market value of such a business. (*Estate of Witlin* (1978) 83 Cal.App.3d 167, 174 [147 Cal.Rptr. 723].)

█ West Coast Construction Company, Inc., existed for some time after respondent was excluded from its operation. The trial court found that

appellant used the corporation's goodwill to his own advantage which is a breach of a fiduciary duty owed to the corporation. Respondent was properly due an award because of the deprivation of this property interest. The law makes no distinction between goodwill and other property with respect to the right of the owner thereof to recover damages for its impairment or destruction. (38 Am.Jur.2d, Good Will, § 24, p. 927.) It is proper for a court to consider and determine the value of goodwill as an asset of a business interest in ascertaining and settling the value of the business upon its dissolution. (*Clement* v. *Duncan* (1923) 191 Cal. 209, 222 [215 P. 1025].)

The trial court, in this instance, determined what respondent's share of the goodwill in the corporation was in determining the credit due respondent from appellant, and ordered that appellant pay that amount directly to respondent. It should have awarded the entire sum due for goodwill to the corporation in order that it be split among the parties, and the matter will be remanded so that this issue can be resolved in an amended form of judgment.

### 3. *Judgment Ordering Payments to Individuals*

 Appellant asserts that the trial court's judgment is in error because it orders appellant to pay certain sums of money to the corporation and certain sums to the other shareholder. This action involved six consolidated cases involving individuals and corporations as parties. The trial court determined that appellant owed monies to each of the corporate entities and to respondent. It also determined that respondent owed monies to each of the corporate entities and to appellant. Because this action consolidated a number of different causes of action involving liabilities to persons as well as to corporations, it was not error to include in the judgment provision that certain sums be paid to individuals as well as to corporate entities.

 In the involuntary dissolution actions, the court determined that appellant had diverted corporate profits to another entity to obtain personal profit. Such an improper distribution allows the corporation to recover from the shareholder personally. (*Zinn* v. *Bright* (1970) 9 Cal.App.3d 188, 192 [87 Cal.Rptr. 736]; see also 15 Cal.Jur.3d (rev.) Corporations, § 293, p. 417.)

### 4. *Lost Profits Calculation*

 Appellant claims that the trial court committed error in the method used to calculate lost profits. The method used by the court was required, according to the court's intended decision, because appellant failed to produce satisfactory records or explanations regarding the business dealings of

the corporate entities. The trial court's determination that an amount certain constitutes the corporation's lost profits is a factual finding. That finding was based on the referee's analysis and the testimony of three accountants.

■ "Our sole task is to determine 'whether the evidence, viewed in the light most favorable to [respondent], sustains [these] findings.' [Citations.] Moreover 'in examining the sufficiency of the evidence to support a questioned finding an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion.' [Citations.] If appellate scrutiny reveals that substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed." (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602].) ■ Substantial evidence exists in the record to support the trial court's determination that lost profits existed in the amount found by the trial court.

■ Further, the specific points that appellant raises in regard to the calculation of damages by the trial court relate to asserted factual errors in those calculations. Appellant's motion for new trial raised none of the issues discussed on appeal concerning the asserted exclusion of certain facts from the calculation of gross profits. Although a motion for new trial is not a prerequisite to raising a legal issue regarding the proper measure of damages, it is a necessary predicate to appeal when the claimed error relates to a conflict over facts. (*Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 122 [135 Cal.Rptr. 802].) Since appellant did not claim error in his motion for new trial in regard to the factual assumptions relied upon by the trial court in its calculations regarding lost profits, he may not raise the issue on appeal.

## 5. *Cross-appeal*

■ Respondent cross-appeals claiming that his waiver of prejudgment interest was the result of coercion since it was in response to the order conditionally granting the motion for new trial, and that he is entitled to such interest. The trial court ordered that appellant's motion for new trial be granted unless respondent filed an acceptance of a modified judgment eliminating all prejudgment interest. This order placed respondent in the position of either foregoing the interest ordered in the original judgment or facing a new trial in a case which had already taken five to seven years to try.

The trial court had apparently been persuaded by appellant's argument, presented in his motion for new trial, that it was without the power to add

interest to the sums awarded because those sums were not capable of having been made certain by calculation prior to the completion of the various accountings which were the basis for the entry of judgment. The trial court apparently did not consider the possible bases for adding interest to certain of the sums awarded. It rather gave respondent the option of accepting the terms of the judgment without interest, or having the court grant the motion for new trial.

The trial court clearly had the discretion to add interest to certain of the sums awarded. Civil Code section 3288 states that "[i]n an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." ▮▮ It is well established that where a litigant proceeds on a theory of a violation of a fiduciary relationship which constitutes constructive fraud, an award of interest is discretionary with the trier of fact. (*Pepitone* v. *Russo* (1976) 64 Cal.App.3d 685, 690 [134 Cal.Rptr. 709].) The fact that the sum is unliquidated does not remove the discretion to award interest in such instances. (*Gherman* v. *Colburn* (1977) 72 Cal.App.3d 544, 587 [140 Cal.Rptr. 330]; *Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 106 [98 Cal.Rptr. 293, 490 P.2d 805].)

The rationale for awarding interest has been stated in strong terms. ▮▮ "When, by virtue of the fraud or breach of fiduciary duty of the defendant, a plaintiff has been deprived of the use of his money or property and is obliged to resort to litigation to recover it, the inclusion of interest in the award is necessary in order to make the plaintiff whole. It is for this reason that it is proper to have such interest run from the time the plaintiff parted with the money or property on the basis of the defendant's fraud." (*Nordahl* v. *Department of Real Estate* (1975) 48 Cal.App.3d 657, 665 [121 Cal.Rptr. 794].)

▮▮ The trial court specifically found that appellant "violated the provisions of Civil Code Section 2228 as it relates to directors and officers of corporations as fiduciaries, and must account to said business entities for the profits so made." Civil Code section 2228 provides that "[i]n all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." Civil Code section 2234 defines any violation of section 2228, or of any other section of the article, as a fraud against the beneficiary of a trust. The court's findings are such that it clearly had the discretion to award interest pursuant to Civil Code section 3288.

▮▮ When a trustee wilfully converts trust property to his own use, he is liable for interest, even though it may not have been prayed for in the

complaint. The circumstances of the case determine whether the interest awarded is simple or compound. In cases of mere negligence, no more than single interest is ever added to the loss or damage resulting therefrom, but if the trustee is guilty of some positive misconduct or wilful violation of duty, the court may award compound interest. (*Katz* v. *Enos* (1945) 68 Cal.App.2d 266, 278-279 [156 P.2d 461].)

■■■ The trial court based its awards on findings that appellant manipulated the corporate entities for his own benefit, that he exercised exclusive control over the business entities without corporate authority to the exclusion of respondent, and that he failed and refused to account to respondent in regard to those corporate activities. These findings involve breaches of fiduciary duties which clearly gave the trial court the discretion to award interest in certain of the sums awarded, even though those sums were unliquidated.

Respondent may even be entitled to interest in certain of the sums awarded. ■■■ As the trial court noted, Civil Code section 2228, relating to trustees, is applicable to directors and officers of corporations as fiduciaries for the stockholders and requires that they act in the utmost good faith towards the beneficiaries. (*Schnittger* v. *Old Home Etc. Min. Co.* (1904) 144 Cal. 603, 606 [78 P. 9]; *Stack* v. *Welder* (1934) 137 Cal.App. 647, 652 [31 P.2d 426].) ■■■ The trial court specifically found that appellant had violated the provisions of this code section.

■■■ In addition, Civil Code section 2229 forbids a trustee from using trust property for his own profit or for any other purpose unconnected with the trust, and has been specifically held to apply to corporate officers. (*Stack* v. *Welder, supra,* 137 Cal.App. at p. 652; *Pacific Vinegar Etc. Works* v. *Smith* (1904) 145 Cal. 352, 363-365 [78 P. 550]; *Sims* v. *Petaluma Gas Light Co.* (1901) 131 Cal. 656, 659 [63 P. 1011]; *Wickersham* v. *Crittenden* (1892) 93 Cal. 17, 30 [28 P. 788].) ■■■ The trial court found that appellant shut respondent out of corporate activities and then manipulated the corporate entities to funnel profits that should have gone to the corporation into his sole proprietorship.

Civil Code section 2237 provides that the beneficiary of a trust has certain remedial options in regard to a trustee who uses or disposes of trust property in violation of Civil Code section 2229. The trustee may be "required to (1) account for all profits so made, *or* (2) to pay the value of its use, and if he has disposed thereof, (3) to replace it with its fruits, *or* (4) to account for its profits with interest. These remedies are alternative." (*Edgar* v. *Bank of America* (1942) 50 Cal.App.2d 827, 833 [123 P.2d 885].) The purpose of these alternative remedies is to allow the beneficiary to be made whole.

(*Work* v. *County Nat. Bank Etc. Co.* (1935) 4 Cal.2d 532, 537 [51 P.2d 90].)

Appellant breached fiduciary duties he owed to the corporation by diverting the equipment, ongoing business records and contracts, and corporate goodwill of West Coast Construction, Inc., into his own sole business enterprise. He used trust property for his own profit in a manner which disposed of the corporation's assets as far as respondent was concerned. Respondent should therefore have the option of requiring appellant to account for the lost profits of the corporation with interest pursuant to Civil Code section 2237.

We need not determine whether or not cross-appellant was coerced into an acceptance of the modified judgment such that he should be afforded equitable relief from the acceptance. The cross-appellant can claim error in the judgment entered without asserting that he was coerced into a remittitur in the damage award. Under the circumstances of this case, the acceptance of the modified judgment is not a waiver of the right to appeal, as is claimed by appellant. ▮▮ "Where, as here, the defendant's appeal has deprived the plaintiff of the benefits he has sought by his consent to the remittitur, the plaintiff cannot be held to have waived his right to appeal." (*Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 345 [126 Cal.Rptr. 731].)

The trial court's judgment is reversed insofar as it allows an award of attorneys fees to respondent and cross-appellant. On remand, the trial court should also amend the judgment to reflect that the total amount of corporate goodwill is owed to the corporation, to be thereafter split among the parties, and to determine whether an award of interest will be made in regard to any of the sums awarded in the judgment. The judgment is affirmed in all other respects. Each party is to bear his own costs on appeal.

Gilbert, Acting P. J., and Abbe, J., concurred.